UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Mary T. Janetos and Erik King, on behalf of plaintiffs and a class, ) ) ) Plaintiffs, ) ) v. ) ) Fulton Friedman & Gullace, LLP, and ) Asset Acceptance, LLC, ) ) Defendants. ) | No. 12 C 1473 Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Mary Janetos and Erik King filed this purported class action against Fulton Friedman & Gullace, LLP ("FF&G") and Asset Acceptance, LLC ("Asset Acceptance") under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p ("FDCPA"). Plaintiff Pamela Fujioka filed an individual FDCPA claim against FF&G and Asset Acceptance (Case No. 12 CV 2128); on July 19, 2012, Judge Lee consolidated her claim into this action. R. 53. Proposed Plaintiff Ignacio Bernave seeks to join this action to assert an individual FDCPA claim as well. In short, Plaintiffs all allege that FF&G, in an attempt to collect purported debts on behalf of Asset Acceptance, sent them or their counsel a form letter on December 12, 2011 that failed to clearly identify which entity actually owns the debt, FF&G or Asset Acceptance. Presently before the Court is Defendants' Joint Motion for Judgment on the Pleadings, R. 54, and Plaintiffs' Motion for Leave to File Second Amended and Consolidated Complaint. R. 59. For the reasons explained below,

1

Defendants' Joint Motion for Judgment on the Pleadings is denied and Plaintiffs' Motion for Leave is granted.

## Legal Standard

Rule 12(c) allows for judgment on the pleadings. In reviewing a Rule 12(c) motion, courts employ the same standard that applies when reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "In evaluating the sufficiency of the complaint, [courts] view it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). Courts also "consider documents attached to the complaint as part of the complaint itself." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010).

A plaintiff may seek leave to amend its complaint under Rule 15(a)(2). Although a court "should freely give leave to amend when justice so requires," Fed. R. Civ. P. 15(a)(2), a court "need not allow an amendment when there is undue

delay, bad faith, dilatory motive, undue prejudice to the opposing party, or when the amendment would be futile." *Bethany Pharmacal Co. v. QVC, Inc.*, 241 F.3d 854, 861 (7th Cir. 2001). A new claim is futile if it could not survive a motion to dismiss. *London v. RBS Citizens, N.A.*, 600 F.3d 742, 747 n.5 (7th Cir. 2010).

Thus, for both the Rule 12(c) and Rule 15(a) motions pending before the Court, the issue is whether Plaintiffs—in their Amended Complaint, R. 13, and proposed Second Amended and Consolidated Complaint, R. 59-1—fail to state a plausible claim for relief under the FDCPA. The following background is a summary of the relevant allegations, viewed in the light most favorable to Plaintiffs.

## Background

Asset Acceptance is a debt collection agency. FF&G is a law firm that manages Asset Acceptance's collection litigation. Asset Acceptance purchases debts from original creditors, including banks, credit card companies, and retail stores. In some cases, after attempting to collect a debt itself, Asset Acceptance refers the matter to FF&G for additional collection efforts. In those cases, Asset Acceptance retains ownership of the debt and FF&G acts as its agent.[1]

**Mary Janetos**

In May 2009, Asset Acceptance sued Janetos in state court to collect an alleged $3,327 credit card debt. Asset Acceptance was represented by an in-house attorney, not FF&G. Janetos was represented by her current counsel, Daniel

---

[1] There is no dispute that Asset Acceptance and FF&G are each "debt collectors" as defined by the FDCPA, 15 U.S.C. §1692a(6).

Edelman of Edelman, Combs, Latturner & Goodwin, LLC. In July 2009, after trial, the state court entered judgment in Janetos' favor.

Although Asset Acceptance lost at trial, Asset Acceptance apparently referred the matter to FF&G for additional collection efforts. On December 12, 2011, FF&G sent a letter to Janetos' counsel, Daniel Edelman, attempting to collect the extinguished debt. R. 13, Am. Compl., Ex. C.[2] The FF&G letterhead states, "Fulton Friedman & Gullace, LLP, Collections, Consulting & Litigation." *Id.* The heading of the letter provides details of the debt:

Re: Mary T Janetos
Asset Acceptance, LLC Assignee of CHASE BANK/HERITAGE CHASE/CHASE
Original Creditor Acct #: XXXXXXXXXXX7143
Fulton, Friedman & Gullace, LLP Acct #: 11-215740
Balance Due: $4608.90

*Id.* The body of the letter begins, "Please be advised that the referenced account has been transferred from Asset Acceptance, LLC to Fulton, Friedman and Gullace, LLP." *Id.* The letter then explains that it is an attempt to collect a debt, that all contact should be directed to FF&G, and that if Janetos "has already entered into a payment plan or settlement arrangement with Asset Acceptance, LLC, please note that we are committed to honoring the same." *Id.* The letter is signed by Dave Smith, "Collections Team (Non-Attorney)." *Id.*

---

[2] Janetos has already settled her individual claims against Asset Acceptance and FF&G for continuing to attempt collection on a debt that the state court judgment extinguished. The only claims remaining before the Court relate to whether FF&G's letter otherwise complied with the FDCPA.

**Erik King**

In May 2008, Asset Acceptance sued King in state court to collect an alleged $13,107 car loan debt. Asset Acceptance was represented by an in-house attorney, not FF&G. In August 2008, the state court entered a default judgment against King. Post-judgment collection proceedings followed.

At some point, Asset Acceptance referred the matter to FF&G for additional collection efforts apart from the post-judgment collection proceedings in the state court case. On December 12, 2011, FF&G sent a letter to King. The body of the letter is the same as the Janetos letter. The heading states:

Re: Asset Acceptance, LLC Assignee of AMERISTAR
Original Creditor Acct #: XX0682
Fulton, Friedman & Gullace, LLP Acct #: XX-XX2109
Balance Due: $17479.23

R. 13, Am. Compl., Ex. D.

**Pamela Fujioka**

Fujioka is in the same position as King. In November 2009, through in-house counsel, Asset Acceptance sued Fujioka in state court to collect an alleged $5,887 credit card debt. In January 2010, the state court entered a default judgment against Fujioka. Post-judgment collection proceedings followed.

On December 12, 2011, FF&G sent a letter to Fujioka. The body of the letter is the same as the Janetos and King letters. The heading states:

Re: Asset Acceptance, LLC Assignee of CAPITAL ONE BANK, NA
Original Creditor Acct #: XXXXXXXXXXXX3984
Fulton, Friedman & Gullace, LLP Acct #: XX-XX3986
Balance Due: $7187.26

5

R. 59-1, Second Am. Compl., Ex. G.

**Ignacio Bernave**

In April 2009, through in-house counsel, Asset Acceptance sued Bernave in state court to collect an alleged $4,199 credit card debt. Bernave was represented by his current counsel, Daniel Edelman. In July 2009, on the day of trial, Asset Acceptance dismissed the lawsuit without prejudice.

On December 12, 2011, FF&G sent a letter to Bernave's counsel. The body of the letter is the same as the Janetos, King, and Fujioka letters. The heading states:

Re: Ignacio Bernave
Asset Acceptance, LLC Assignee of HARLEM FURNITURE/WORLD FINANCIAL NETWORK NATIONAL BANK
Original Creditor Acct #: XXXXXXXXXXX4431
Fulton, Friedman & Gullace, LLP Acct #: 11-214803
Balance Due: $5177.79

R. 59, Second Am. Compl., Ex. K.

**Analysis**

**I.    15 U.S.C. § 1692g**

In their First Amended Complaint, Plaintiffs allege that FF&G's December 12, 2011 letters violate 15 U.S.C. § 1692g(a)(2). Section 1692g addresses "[v]alidation of debts" and provides that:

> (a)    Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1)    the amount of the debt;

6

> **(2) the name of the creditor to whom the debt is owed;**
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g (emphasis added).

Plaintiffs allege that it is unclear from FF&G's December 12, 2011 letters whether FF&G purchased the purported debts from Asset Acceptance or is merely attempting to collect the debts as an agent of Asset Acceptance or some other entity. Plaintiffs therefore allege that the letters fail to clearly identify the current creditor that actually owns the debts in violation of § 1692g(a)(2).

## A. Applicability of Section 1692g

As an initial matter, the parties dispute whether § 1692g applies to FF&G's letters. By its terms, § 1692g applies to initial communications. For each Plaintiff here, Asset Acceptance itself began collection efforts on the purported debts several years before FF&G sent the letters at issue. Thus, although Plaintiffs allege that

the December 12, 2011 letters were the "initial communications" from FF&G, Am. Compl. ¶¶ 25, 32, they do not, and presumably cannot, allege that FF&G's letters were the "initial communications" with respect to these purported debts.

Courts are split on whether § 1692g applies to initial communications from each successive debt collector. Some courts have reasoned that § 1692g refers in the singular to "the initial communication," and that as a result, successive debt collectors are not required to send another validation notice. *See, e.g., Paris v. Steinberg & Steinberg*, 828 F. Supp. 2d 1212, 1222 (W.D. Wash. 2011); *Waters v. J.C. Christensen & Assoc.*, No. 08-11795, 2011 WL 134452, *10-11 (D. Mass. Mar. 4, 2011); *Marshall v. Deutsche Bank Nat'l Trust Co.*, No. 10 CV 754, 2011 WL 345988, at *5 (E.D. Ark. Feb. 1, 2011); *McNall v. Credit Bureau of Josephine Cnty.*, 689 F. Supp. 2d 1265, 1269 (D. Or. 2010); *Senftle v. Landau*, 390 F. Supp. 2d 463, 473 (D. Md. 2005); *Ditty v. CheckRite, Ltd.*, 973 F. Supp. 1320, 1329 (D. Utah 1997). Two courts in this District have endorsed the view that § 1692g does not apply to an attorney attempting to collect a debt where a debt collection agency already had substantial contact with the debtor. *See Weinstein v. Fink*, No. 99 C 7222, 2001 WL 185194, at *7 (N.D. Ill. Feb. 26, 2001) (Guzman, J.); *Thomas v. Law Firm of Simpson & Cybak*, No. 00 C 8211, 2001 WL 1516746, at *3-4 (N.D. Ill. Nov. 28, 2001) (Coar, J.), *rev'd on other grounds*, 392 F.3d 914 (7th Cir. 2004).

Other courts have found that § 1692g's language is ambiguous and then broadly construed the statutory language in order to advance the FDCPA's goals. These courts concluded that § 1692g applies to the initial communications from

8

each successive debt collector. *See, e.g., Stair v. Thomas & Cook*, 254 F.R.D. 191, 195-97 (D.N.J. 2008); *Turner v. Shenandoah Legal Group, P.C.*, No. 06 CV 45, 2006 U.S. Dist. LEXIS 39341, at *29-40 (E.D. Va. June 12, 2006); *Sutton v. Law Offices of Alexander Lawrence*, No. 90-369, 1992 U.S. Dist. LEXIS 22761, at *7-9 (D. Del. June 17, 1992); *Griswold v. J & R Anderson Bus. Servs., Inc.*, No. 82-1474, 1983 U.S. Dist. LEXIS 20365, at *2-4 (D. Or. Oct. 24, 1983). At least one court in this District has adopted this broader reading of § 1692g. *See Francis v. Snyder*, 389 F. Supp. 2d 1034, 1040 n. 2 (N.D. Ill. 2005) (Grady, J.) ("The requirement of providing valid disclosures under § 1692g applies to each debt collector.").

This Court has reviewed the statute and relevant case law and agrees with the latter approach. Although the Court of course must begin with the plain language of the statute, § 1692g itself is ambiguous. It refers in the singular to "the initial communication with a consumer in connection with the collection of any debt," but the very next clause refers to "a debt collector." As a result, § 1692g is not clear on its face whether "the initial communication" requirements apply once to each debt or once to each debt collector who attempts to collect a debt. Section 1692g's plain language does not support one reading over the other.[3]

---

[3] Some courts have reasoned that 15 U.S.C. § 1692e(11) (distinguishing between initial and subsequent communications to a debtor) shows that Congress knew the difference between initial and successive debt collectors and could have explicitly required that both provide the § 1692g validation notice if that was its intent. *See, e.g., Waters*, 2011 WL 134452, at *11. But that reasoning cuts both ways. If Congress knew the difference and intended that § 1692g apply only to the first debt collector, it could have explicitly said that § 1692g applies only to the first debt collector. As discussed above, it did not. Again, § 1692e(11)'s language does not support one reading of § 1692g over the other.

9

In the absence of a clear statutory directive, "[b]ecause the FDCPA is a remedial statute, [courts have] construe[d] its language broadly, so as to effect its purpose." *Stair*, 254 F.R.D. at 196 (quoting *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006)). *See also Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1171 (9th Cir. 2006) ("[B]ecause the FDCPA is a remedial statute aimed at curbing what Congress considered to be an industry-wide pattern of and propensity towards abusing debtors, it is logical for debt collectors—repeat players likely to be acquainted with the legal standards governing their industry—to bear the brunt of the risk."); *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996) ("As the Supreme Court has held in the general context of consumer protection—of which the [FDCPA] is a part—'it does not seem unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line.'") (quoting *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 393 (1965)).

Given the FDCPA's purpose of curbing abusive debt collection practices, the Court declines to read a loophole into § 1692g that would exempt successive debt collectors from sending a validation notice. Plaintiffs provide a laundry list of reasons why each successive debt collector should be required to comply with § 1692g. R. 67 at 11-15. But the Court does not need to look any further than Plaintiff Janetos' case, which readily illustrates that § 1692g is not superfluous when a new debt collector enters the picture. In her case, while Asset Acceptance was initially attempting to collect the purported debt, Janetos prevailed at trial and obtained a judgment extinguishing the debt. Nonetheless, for one reason or another,

Asset Acceptance sent her account to FF&G for further collection efforts. The Court assumes that this was some sort of mistake, but since mistakes (or worse) certainly happen, it is important that successive debt collectors send a § 1692g validation notice before commencing full-scale collection efforts. The validation notice helps to ensure that any mistakes like this are promptly resolved.

Moreover, it is not a heavy burden for each debt collector to comply with § 1692g's validation requirements. FF&G's letters were already an attempt to send a validation notice pursuant to § 1692g—they contain the precise language required by § 1692g(3)-(5)—which is at least a tacit acknowledgment that FF&G knew it was required to send a validation notice. Indeed, in light of the split authority on whether § 1692g applies, a successive debt collector would be foolish to ignore § 1692g and run the risk that a court might later find FDCPA violations. The Federal Trade Commission has also long commented that successive debt collectors in FF&G's position should comply with § 1692g. *See, e.g.,* 53 Fed. Reg. 50097, 50108 (Dec. 13, 1988) (explaining that "an attorney who regularly attempts to collect debts by means other than litigation . . . must provide the required notice, even if a previous debt collector (or creditor) has given such notice").

In short, the Court finds that § 1692g applies to the initial communication in connection with the collection of a debt by each successive debt collector. This result comports with both the text of § 1692g and the FDCPA's overarching purpose. The Court now turns to whether Plaintiffs state a plausible claim that FF&G's December 12, 2011 letters actually violate § 1692g.

11

**B. King and Fujioka – "Unsophisticated Consumer" Standard**

FF&G sent two of the letters at issue directly to consumers, Plaintiffs King and Fujioka. A debt collector violates § 1692g if it either fails to provide required information or provides required information "in a manner that is 'confusing' to the consumer." *McMillan v. Collection Prof'ls, Inc.*, 455 F.3d 754, 758 (7th Cir. 2006). The Court analyzes collection letters under an objective "unsophisticated consumer" standard. *See, e.g., Durkin v. Equifax Check Servs.*, 406 F.3d 410, 414-15 (7th Cir. 2005). This "hypothetical" unsophisticated consumer "is not as learned in commercial matters as are federal judges, but neither is he completely ignorant." *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000). The unsophisticated consumer "possesses rudimentary knowledge about the financial world, is wise enough to read collection notices with added care, possesses reasonable intelligence, and is capable of making basic logical deductions and inferences." *Id.* (citations omitted). Under this objective standard, a plaintiff's "anecdotal proclamations of being confused will not suffice." *Durkin*, 406 F.3d at 414-15. A collection letter is not confusing "unless a significant fraction of the population would be similarly misled." *Pettit*, 211 F.3d at 1060.

Surprisingly, none of the parties here discuss the rule in the Seventh Circuit that the unsophisticated consumer standard is generally a fact issue that cannot be decided at the pleading stage. As Judge Easterbrook explained in *Walker v. National Recovery, Inc.*, 200 F.3d 500, 501 (7th Cir. 1999):

> How a particular notice affects its audience is a question of fact, which may be explored by testimony and devices

>such as consumer surveys. We held accordingly in *Johnson v. Revenue Management Corp.*, 169 F.3d 1057 (7th Cir. 1999), that a complaint alleging that a particular notice confuses recipients may not be dismissed under Fed. R. Civ. P. 12(b)(6)—not only because 'this notice is confusing' states a claim on which relief may be granted, but also because district judges are not good proxies for the 'unsophisticated consumers' whose interests the statute protects.

*See also Taylor v. Cavalry Inv., L.L.C.*, 365 F.3d 572, 575 (7th Cir. 2004) ("A judge might be mistaken in supposing that a letter that was clear to him was clear to unsophisticated debtors . . . and so it is open to a plaintiff, in any but the clearest case, to present objective evidence of confusion, for example the results of a consumer survey."); *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326-27 (7th Cir. 2000) (explaining that "confusion is a question of fact rather than a question of law, so plaintiffs are entitled to present empirical evidence that might show the dunning letter in question to be confusing in the eyes of the unsophisticated consumer," and that "a FDCPA complaint states a legal claim, and therefore a FDCPA complaint survives a motion to dismiss under Rule 12(b)(6)[,] simply by alleging that a dunning letter was confusing").

This general rule does not mean that the unsophisticated consumer test can *never* be resolved at the pleading stage. A letter might be so clear that a plaintiff has no plausible § 1692g claim. *See, e.g., Ruth v. Triumph P'ships*, 577 F.3d 790, 800 (7th Cir. 2009) (recognizing a category of cases "involving statements that plainly, on their face, are not misleading or deceptive"). "[A] plaintiff fails to state a claim and dismissal is appropriate as a matter of law when it is 'apparent from a reading

13

of the letter that not even a significant fraction of the population would be misled by it.'" *Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 636 (7th Cir. 2012) (quoting *Taylor*, 365 F.3d at 574). Thus, "as a matter of law, [courts will] not entertain a plaintiff's bizarre, peculiar, or idiosyncratic interpretation of a collection letter." *McMillan*, 455 F.3d at 758. *See also Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 776-77 (7th Cir. 2007) (explaining that a claim also may be resolved on the pleadings if the plaintiff rests on the letters themselves and does not intend to offer extrinsic evidence, the defendant used clear statutory language, or the statement at issue clearly was immaterial, among other things).

This case presents a very close call at the pleading stage. Plaintiffs allege that FF&G's letters violate § 1692g by failing to clearly identify which entity is the current creditor that actually owns the purported debts, FF&G or Asset Acceptance. Plaintiffs allege that although Asset Acceptance still owns the debts and was only using FF&G as its agent for further collection efforts, the letters could lead a consumer to believe that the debts may have been sold to FF&G.

The Court is skeptical that FF&G's letters would confuse an unsophisticated consumer, let alone in any material way. The very first line of the header states, in King's case, "Re: Asset Acceptance, LLC Assignee of AMERISTAR," and in Fujioka's case, "Re: Asset Acceptance, LLC Assignee of CAPITAL ONE BANK, NA." Those references appear to identify Asset Acceptance as the current creditor and owner of the debt. Moreover, although Plaintiffs take issue with FF&G's subsequent statement in the letter that the account "has been transferred" from Asset

14

Acceptance to FF&G, the FDCPA's definition of "creditor" uses the word "transfer" in the same way that FF&G apparently intended it. *See* 15 U.S.C. § 803(4) ("The term 'creditor' means any person who offers or extends credit creating a debt or to whom a debt is owned, but such term *does not include* any person to the extent he receives an assignment *or transfer* of a debt in default solely for the purpose of facilitating collection of such debt from another.") (emphasis added). The Court is also uncertain whether it would make any difference to the unsophisticated consumer's decision process if FF&G had actually purchased the debts from Asset Acceptance as opposed to merely acting as Asset Acceptance's collection agent. That appears to be an internal issue largely between Asset Acceptance and FF&G.

Nonetheless, because the unsophisticated consumer standard generally presents a fact issue, the Court believes that Plaintiffs have shown just enough potential for confusion in order to move past the pleadings and have the opportunity to develop evidence to support their claims. FF&G's letters do not expressly identify which entity currently owns the purported debts—the headers contain various information, including references to both Asset Acceptance and FF&G, but do not actually label either entity as the owner of the purported debts. Moreover, although the FDCPA's definition of "creditor" may shed some light on what the word "transfer" means in the body of the letter, an unsophisticated consumer would not ordinarily think to consult statutory definitions for guidance.[4]

---

[4] Indeed, although the parties have offered various dictionary definitions of the word "transfer," none of the parties raise 15 U.S.C. § 803(4) in their briefs.

FF&G and Asset Acceptance also argue that the letters should be clear to anyone with knowledge of the collection history of these accounts. But even if the recipients of these letters were familiar with Asset Acceptance's prior collection efforts, that would not resolve the alleged confusion in this case over whether Asset Acceptance had just sold their debts to a new entity, FF&G.

As a result, Plaintiff King states a plausible claim for relief in the Amended Complaint, and Plaintiff Fujioka's claim in the proposed Second Amended and Consolidated Complaint is not futile, at least at this stage.

### C. Janetos and Bernave – "Competent Attorney" Standard

FF&G sent the other two letters at issue to counsel for Plaintiffs Janetos and Bernave. As a result, the Court analyzes these letters under the more rigorous "competent attorney" standard. *See, e.g., Evory*, 505 F.3d at 774-75 (explaining that the unsophisticated consumer test "is inappropriate for judging communications with lawyers"). This heightened standard applies because "[a] sophisticated person is less likely to be either deceived or misled than an unsophisticated one." *Id.* Thus, under the competent attorney standard, "a representation by a debt collector that would be unlikely to deceive a competent lawyer, even if he is not a specialist in consumer debt law, should not be actionable." *Id.*

For the same reasons discussed above, the Court is even more skeptical that FF&G's letters would confuse a competent lawyer, let alone in any material way. Moreover, although the case law on the competent attorney standard is far less developed, it appears that this issue would be more susceptible to resolution on the

pleadings. Judge Easterbrook's concern that judges may not be good proxies for unsophisticated consumers does not apply in this context; the Court can more easily judge what might confuse or mislead a competent attorney.

Nonetheless, the Court again declines to resolve this issue on the pleadings. As discussed above, Plaintiffs have shown just enough potential for confusion stemming from the letters. Although a competent lawyer would be familiar with Asset Acceptance's prior collection efforts and would likely recognize from the letterhead that FF&G is a law firm, the lawyer still would not necessarily know whether Asset Acceptance had just sold his client's purported debts to FF&G or if FF&G was merely acting as Asset Acceptance's collection agent.

As a result, Plaintiff Janetos states a plausible claim for relief in the Amended Complaint, and Plaintiff Bernave's claim in the proposed Second Amended and Consolidated Complaint is not futile, at least at this stage.

## II. 15 U.S.C. § 1692e

In their proposed Second Amended and Consolidated Complaint, Plaintiffs allege that FF&G's letters also violate the more general requirements of 15 U.S.C. § 1692e and e(10), which provide that:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

\* \* \*

17

      (10)    The use of any false representation or
deceptive means to collect or attempt to collect any debt
or to obtain information concerning a consumer.

Asset Acceptance and FF&G argue that Plaintiffs' motion for leave should be denied because their § 1692e claim is futile. Although the Court is skeptical of this claim as well, just as Plaintiffs state a plausible claim that FF&G's letters are confusing to an unsophisticated consumer or competent attorney, Plaintiffs also state a plausible claim that FF&G's letters are deceptive or misleading. As a result, the Court cannot say at this stage that the claim is futile.

## Conclusion

For the foregoing reasons, Defendants' Joint Motion for Judgment on the Pleadings is denied and Plaintiffs' Motion for Leave to File Second Amended and Consolidated Complaint is granted. In granting Plaintiffs' Motion for Leave, the Court strikes Count IV in Plaintiffs' proposed Second Amended and Consolidated Complaint, which asserts a claim under 15 U.S.C. § 1692c(a)(2) that Plaintiffs have represented they do not intend to pursue. R. 68 at 2 n.2.

    ENTERED:

    *[signature: Thomas M. Durkin]*

    Honorable Thomas M. Durkin
    United States District Judge

Dated:  March 4, 2013