UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARY T. JANETOS AND ERIK KING, ON BEHALF OF A CLASS, PAMELA FUJIOKA, AND IGNACIO BERNAVE, <br><br> PLAINTIFFS, <br><br> v. <br><br> FULTON FRIEDMAN & GULLACE, LLP AND ASSET ACCEPTANCE, LLC, <br><br> DEFENDANTS. | No. 12 C 1473 <br><br> Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Mary Janetos and Erik King, individually and on behalf of a class, and Pamela Fujioka and Ignacio Bernave, individually, have filed Fair Debt Collections Practices Act ("FDCPA") claims against defendants Fulton Friedman & Gullace, LLP ("FF&G") and Asset Acceptance, LLC ("Asset"). In 2011, FF&G sent debt-collection letters to the plaintiffs on behalf of Asset, the then-current owner of plaintiffs' purported debts. FF&G's form letter stated that the debtor's "account has been transferred from [Asset] to [FF&G]." *See, e.g.*, R. 125 ¶ 20. The plaintiffs allege that the defendants violated 15 U.S.C. §§ 1692e, 1692e(10), and 1692g(a)(2) because the letter is confusing with respect to which of the two entities—Asset or FF&G—is the creditor to whom the plaintiffs owed their debts.[1] The parties have filed cross-

---

[1] The plaintiffs' Second Amended Complaint also included a claim for relief under 15 U.S.C. § 1692(c)(a)(2). R. 86 ¶¶ 92-96 (Count IV). The Court struck that claim after the plaintiffs indicated that they did not intend to pursue it. R. 84 (*Janetos v.*

motions for summary judgment.[2] For the following reasons, the Court grants the defendants' motion, and denies the plaintiffs' motion.

## BACKGROUND

**I.    Factual Background**

In 2008 and 2009, Asset filed separate lawsuits against each of the plaintiffs in the Circuit Court of Cook County. R. 125 ¶¶ 13, 23, 31, 39. In each lawsuit, Asset claimed that it had purchased a delinquent debt owed by the plaintiff. *Id.* Janetos won her lawsuit. *Id.* at ¶ 16. Asset voluntarily dismissed its lawsuit against Bernave without prejudice. *Id.* at ¶ 42. And it obtained ex-parte default judgments against King, on August 14, 2008, and Fujioka, on January 4, 2010. *Id.* at ¶¶ 26, 34.

At some point, Asset retained FF&G to collect debts on its behalf. *Id.* at ¶ 53. On or about December 12, 2011, FF&G sent form collection letters to Janetos's and Bernave's counsel, and to King and Fujioka directly. *Id.* at ¶¶ 19, 27, 35, 43. Above the salutation, the letters provided information about the purported debt:

> December 12, 2011
> Re: Asset Acceptance, LLC Assignee of [_____][3]
> Original Creditor Acct #: [_____]
> Fulton, Friedman & Gullace, LLP Acct #: [_____]
> Balance Due: [___]

---

*Fulton Friedman & Gullace, LLP*, No. 12 C 1473, 2013 WL 791325, at *9 (N.D. Ill. Mar. 4, 2013)).

[2] The Court granted FF&G's motion to join Asset's motion for summary judgment. R. 120.

[3] In FF&G's letters to counsel for Janetos and Bernave, the debtor's name appears immediately after "Re," below which the letter states "Asset Acceptance, LLC Assignee of [_____]." *See* R. 125 ¶¶ 21, 45.

*See id.* at ¶¶ 21, 29, 37, 45. The letters that FF&G sent to Janetos's and Bernave's attorneys stated in relevant part:

> Please be advised that the referenced account has been transferred from Asset Acceptance, LLC to Fulton, Friedman & Gullace, LLP . . . . If your client has already entered into a payment plan or settlement arrangement with Asset Acceptance, LLC, please note that we are committed to honoring the same.

*See id.* at ¶¶ 20, 44. The letters that FF&G sent directly to King and Fujioka contained similar language:

> Please be advised that your above referenced account has been transferred from Asset Acceptance, LLC to Fulton, Friedman & Gullace, LLP. If you have already entered into a payment plan or settlement arrangement with Asset Acceptance, LLC, please note that we are committed to honoring the same.

*Id.* at ¶¶ 28, 36. The letters listed a return address for FF&G in Warren, Michigan below the line "***Detach Lower Portion and Return with Payment***." *Id.* at ¶ 49.

## II. Procedural Background

On March 4, 2013, the Court denied the defendants' motion for judgment on the pleadings. *Janetos*, 2013 WL 791325, at *9. The Court considered it a "very close call" whether the plaintiffs had stated a claim for relief:

> The Court is skeptical that FF&G's letters would confuse an unsophisticated consumer, let alone in any material way. The very first line of the header states, in King's case, "Re: Asset Acceptance, LLC Assignee of AMERISTAR," and in Fujioka's case, "Re: Asset Acceptance, LLC Assignee of CAPITAL ONE BANK, NA." Those references appear to identify Asset Acceptance as the current creditor and owner of the debt. Moreover, although Plaintiffs take issue with FF&G's subsequent statement in the letter that the account "has been transferred" from Asset Acceptance to FF&G, the FDCPA's definition of "creditor" uses the word "transfer" in the same way that FF&G apparently intended it. *See* 15 U.S.C. § 803(4) ("The term 'creditor' means any person who offers or extends credit creating a debt or to

> whom a debt is owned, but such term *does not include* any person to the extent he receives an assignment *or transfer of* a debt in default solely for the purpose of facilitating collection of such debt from another.") (emphasis added). The Court is also uncertain whether it would make any difference to the unsophisticated consumer's decision process if FF&G had actually purchased the debts from Asset Acceptance as opposed to merely acting as Asset Acceptance's collection agent. That appears to be an internal issue largely between Asset Acceptance and FF&G.

*Janetos*, 2013 WL 791325, at *7. Despite these reservations, the Court concluded that the plaintiffs had "shown just enough potential for confusion in order to move past the pleadings and have the opportunity to develop evidence to support their claims." *Id.* at *8. The letters do not expressly identify which party owns the debt, and presumably an "unsophisticated consumer" would not read the letter with the statutory definition of "creditor" in mind. *Id.* The Court also rejected the defendants' argument that the plaintiffs' prior interactions with Asset clarified its role as creditor. *Id.* The fact that Asset claimed to have owned the debt in the past did not rule out the possibility that it later sold the debt to FF&G. *Id.*

During discovery, the plaintiffs elected not to obtain survey evidence or expert testimony to support their claim that the defendants' letters would confuse an "unsophisticated consumer." In lieu of such evidence, the plaintiffs served document requests and interrogatories seeking information about whether the defendants received inquiries from debtors "as to whom the current creditor or owner of the debt is." R. 100-1 at 4-5; *see also* R. 100-2 at 2; R. 100-3 at 2. The defendants objected to these discovery requests as, among other things, unduly burdensome. R. 107 at 12-16 (Trans. of Proceedings, dated May 28, 2013). On May

28, 2013, the Court ruled that the evidence that the plaintiffs sought was only "marginally relevant" to their claims and did not warrant the effort and expense it would take to obtain. *Id.* at 19-20

Finally, on July 21, 2014, the Court certified a class consisting of all individuals in Illinois to whom FF&G sent a letter, similar to the one that it sent to Erik King, between March 1, 2011 and March 21, 2012. R. 138 (*Janetos v. Fulton Friedman & Gullace, LLP*, No. 12 C 1473, 2014 WL 3600518, at *4 (N.D. Ill. July 21, 2014)). It also certified a subclass of individuals to whom FF&G sent letters similar to the one that it sent to Janetos's attorney. *Janetos*, 2014 WL 3600518, at *4.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Ball v. Kotter*, 723 F.3d 813, 821 (7th Cir. 2013). To defeat summary judgment, a nonmovant must produce more than "a mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013). Ultimately, summary judgment is warranted only if a reasonable jury could not

return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ANALYSIS

The plaintiffs argue that the word "transferred" in FF&G's form letter is misleading, in violation of 15 U.S.C. §§ 1692e, 1692e(10), and 1692g.

**I.      15 U.S.C. 1692e & e(10)**

Section 1692e and e(10) prohibit debt collectors from using false, deceptive, or misleading statements in connection with the collection of a debt:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> [. . .]
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e(10). Although not expressly required by the statute, the Seventh Circuit has held that a false or misleading representation must be material to support liability. The FDCPA "is designed to provide information that helps consumers to choose intelligently, and by definition immaterial information neither contributes to that objective (if the statement is correct) nor undermines it (if the statement is incorrect)." *See Hahn v. Triumph P'ship LLC*, 557 F.3d 755, 757-58 (7th Cir. 2009); *see also Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012) ("Lox must also demonstrate that CDA's attorney fees language constituted a *materially* false statement.") (emphasis in original).

A.   **FF&G's Letters to King and Fujioka**

With respect to the letters that FF&G sent directly to King and Fujioka, the question is whether the term "transferred" would confuse an "unsophisticated consumer":

> The unsophisticated consumer may be "uninformed, naïve, [and] trusting," *Veach v. Sheeks*, 316 F.3d 690, 693 (7th Cir. 2003), but is not a dimwit, has "rudimentary knowledge about the financial world," and is "capable of making basic logical deductions and inferences," [*Wahl v. Midland Credit Management, Inc.*, 556 F.3d 643, 645 (7th Cir. 2009)] (quoting P*ettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000)). Furthermore, because we have rejected the "least sophisticated consumer" standard, a letter must be confusing to "a significant fraction of the population." *Taylor v. Cavalry Inv., L.L.C.*, 365 F.3d 572, 574 (7th Cir. 2004).

*Lox*, 689 F.3d at 822. The standard is objective, *id.* at 826, and the court treats the issue "as a question of fact." *Id.* at 822. The type of evidence required to show whether a letter is (or is not) misleading depends on the nature of the communication. *Id.* "Extrinsic evidence"—*e.g.*, a consumer survey—is unnecessary when the letter at issue is plainly *not* misleading, or plainly *is* misleading. *Id.* If the language is not misleading or confusing on its face, but may be misleading to an unsophisticated consumer, then the plaintiff must submit extrinsic evidence "to prove that unsophisticated consumers do in fact find the challenged statements misleading or deceptive." *Id.*

1.   **Whether the Plaintiffs Were Required to Submit Extrinsic Evidence**

The plaintiffs argue that extrinsic evidence is unnecessary because the letter is misleading on its face. In the legal context, the word "transfer" often—but not

always—means to convey "title" from one person to another. R. 115 at 9. As the plaintiffs acknowledge, however, the term can also mean "assignment for collection." *Id.* at 10 (citing *Unifund CCR Partners v. Shah*, 993 N.E.2d 518, 520-21 (Ill. App. Ct. 1st Dist. 2013)); *see also Janetos*, 2013 WL 791325, at *7 (citing the FDCPA's definition of "creditor"). And for purposes of the unsophisticated-consumer test, the general, non-legal definition of "transfer" is arguably more apt. *See Janetos*, 2013 WL 791325, at *8 ("[A]lthough the FDCPA's definition of 'creditor' may shed some light on what the word 'transfer' means in the body of the letter, an unsophisticated consumer would not ordinarily think to consult statutory definitions for guidance."). As used in ordinary speech, "transfer" simply means "to convey from one person, place or situation to another." Merriam-Webster Dictionary Online, available at http://www.merriam-webster.com/dictionary/transfer (last visited Apr. 7, 2015). Applying that definition, the letter does not suggest any particular form or method of conveyance. According to the plaintiffs, however, the ambiguity alone is sufficient to establish that the letter was misleading without having to provide extrinsic evidence. R. 115 at 10.

The plaintiffs cite *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996) for the proposition that "a collection notice is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate." But the Seventh and Second Circuits apply different standards in § 1692e cases, which in turn affects the type of proof that a plaintiff must submit to prevail under the statute. In the Second Circuit, a debt-collection letter is misleading if it would

deceive the "least sophisticated" consumer, a person lacking "even the sophistication of the average, everyday, common consumer." *Russell*, 74 F.3d at 34; *cf. Lox*, 689 F.3d at 822. Also unlike the Seventh Circuit, the Second Circuit treats the issue as a question of law, not fact. *Russell*, 74 F.3d at 34. Arguably, any ambiguity in a debt-collection letter would support a legal finding that the "least sophisticated consumer" would be misled. The standard in the Seventh Circuit is more demanding. The fact that an unsophisticated consumer *could* interpret FF&G's letter to mean that FF&G owned the debt was sufficient (although barely) to state a claim for relief. At the summary-judgment stage, the plaintiffs must produce evidence that a "significant fraction of the population" *would* interpret it that way:

> Because there is at least one reasonable interpretation of "[p]lease be advised that this office claims a lien for fees plus costs related to this matter" that is not false or misleading, this Court cannot conclude that the statement is misleading as a matter of law. Thus, in order to prevail, the plaintiff would need to put forth evidence beyond the letter in order to show that the unsophisticated consumer would be misled by the statement.

*Omaraie v. A. Alliance Collection Agency, Inc.*, No. 06 C 1727, 2007 WL 2409794, at *6 (N.D. Ill. Aug. 21, 2007). The plaintiffs rely exclusively on the letters themselves and their own affidavits stating that they found the letters confusing. This evidence is insufficient to support summary judgment in their favor, and also insufficient to create a material factual dispute for trial.

### 2. Whether the Letters are Materially Misleading

Even if the plaintiffs had established that FF&G's letters would confuse a significant fraction of the population, their claims would still fail because the letters

are not materially misleading. *See Hahn*, 557 F.3d at 757-58; *cf. Lox*, 689 F.3d at 827. In *Hahn*, the defendant sent the plaintiff a letter stating that she owed $1,134.55, broken down into "amount due" ($1,051.91) and "interest due" ($82.64). *Id.* at 756. The plaintiff alleged that the letter was misleading because the "amount due" figure included interest that had accrued before the defendant acquired the debt. *Id.* The *Hahn* court held that the letter was truthful, and in the alternative, that the purported falsity was immaterial. *Id.* at 757-58. For the FDCPA's purposes, it is irrelevant whether the debt is expressed as a "bottom line" amount or broken down into principal and interest. *Id.* at 757. "A dollar due is a dollar due." *Id.*; *see also Barnes v. Advanced Call Ctr. Tech., LLC*, 493 F.3d 838, 840-41 (7th Cir. 2007) (applying similar reasoning in a § 1692g case); *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1034 (9th Cir. 2010) ("Even if the Complaint had separated $32.89 into interest and finance charges, we can conceive of no action Donohue could have taken that was not already available to her on the basis of the information in the Complaint—nor has Donohue articulated any different action she might have chosen."). Because the letter was both truthful and not materially misleading, the *Hahn* court affirmed summary judgment in the defendant's favor.

By contrast, the court in *Lox* held that the defendant's debt-collection letter was materially misleading. The defendant in *Lox* sent a debt-collection letter to the plaintiff stating that its "client may take legal steps against you and if the courts [sic] award judgment, the court could allow court costs and attorneys['] fees." 689 F.3d at 821. The defendant conceded that it could not have obtained attorneys' fees

and costs in connection with a suit to collect the debt. *Id.* at 823. And although couched in conditional language, the implication that the creditor *could* obtain that relief was misleading: "it is improper under the FDCPA to imply that certain outcomes might befall a delinquent debtor when, legally, those outcomes cannot come to pass." *Id.* The Court further held that the deception was material:

> In *Hahn* and *Donohue*, the alleged false statements did not, and could not, have any effect on the amount of debt owed by the plaintiff, regardless of when plaintiff decided to pay off the debt. Here, Lox would not have had to pay any additional money if he paid his debt immediately upon receipt of the dunning letters, but if CDA's statement regarding attorney fees were accurate, a decision to contest the debt could have turned out to be much more costly. Whether or not this fact would have led Lox to alter his course of action, it would have undoubtedly been a factor in his decision-making process, and very well could have led to a decision to pay a debt that he would have preferred to contest. The false statement was therefore material.

*Id.* at 827.

This case is more like *Hahn* and *Donohue* than *Lox*. The Court previously noted that it is "uncertain whether it would make any difference to the unsophisticated consumer's decision process if FF&G had actually purchased the debts from [Asset] as opposed to merely acting as [Asset's] collection agent. That appears to be an internal issue largely between [Asset] and FF&G." *Janetos*, 2013 WL 791325, at *7. The plaintiffs have not persuaded the Court that the distinction is material. FF&G's legal capacity with respect to the debt has no bearing on the amount of the debt or an unsophisticated consumer's decision whether to pay it. The plaintiffs have not argued—much less shown—that a check made payable to FF&G and mailed to the address indicated in the letter would be insufficient to extinguish

the underlying debt. Even if payment to FF&G would be insufficient in itself, FF&G would be legally (and ethically) required to transmit those funds to Asset in satisfaction of debts that it had been retained to collect. A payment plan with one would be honored by the other. The ambiguity in FF&G's letters to King and Fujioka is immaterial.

B.   **FF&G's Letters to Counsel for Janetos and Bernave**

The letters that FF&G sent to plaintiffs' attorneys are governed by a more rigorous "competent attorney" standard. *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 774-75 (7th Cir. 2007). Their attorney, Daniel Edelman, states that "[a]fter review of the letters I was unable to tell from reading the letters whether the Janetos and Bernave accounts were owned by (a) [Asset], (b) FF&G, or (c) some third party that had retained FF&G to collect on those accounts." R. 116-1 at 117. He further states that "[i]t was only after I did some research that I concluded that Asset owned the accounts and had retained FFG to collect on them." *Id*. Mr. Edelman: (1) did "a Google search to determine what kind of business [FF&G] was engaged in and the location of its offices;" and (2) determined "from an internet search of bar numbers that attorneys who formerly had worked for Asset were now working for" FF&G. *Id*. The standard that the Seventh Circuit established in *Evory* presumes that the competent attorney will perform *some* investigation. *See* 505 F.3d at 774-75.[4] The internet searches that Mr. Edelman describes would take a

---

[4] The plaintiffs argue that *Evory*'s "competent attorney standard does not require an attorney to do factual research." R. 127 at 10. The Court disagrees. The *Evory* court observed that some false statements—*e.g.*, a false statement about the "unpaid

competent attorney a few minutes to complete and dispel any confusion created by the word "transferred." Emphasizing *one* accepted definition of that term, and then purporting to construe it in a factual vacuum, elevates form over substance. Also, for the reasons the Court stated in connection with King's and Fujioka's claims, the ambiguity is immaterial. Thus, the defendants are entitled to summary judgment on Janetos's and Bernave's § 1692e and e(10) claims.

## II.    15 U.S.C. § 1692g

Section 1692g requires debt collectors to include certain information in communications with the debtor, including "the name of the creditor to whom the debt is owed." 15 U.S.C. § 1692g(a)(2). The information that § 1692g requires the debt collector to disclose must be presented in a "nonconfusing manner":

> The statute does not say in so many words that the disclosures required by it must be made in a nonconfusing manner. But the courts, our own included, have held, plausibly enough, that it is implicit that the debt collector may not defeat the statute's purpose by making the required disclosures in a form or within a context in which they are unlikely to be understood by the unsophisticated debtors who are the particular objects of the statute's solicitude.

*Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997). The inquiry under §§ 1692e and 1692g is "basically the same":

---

balance of the consumer's debt"—"may be as difficult for a lawyer to see through as a consumer." 505 F.3d at 775. With respect to such statements, the "lawyer might be unable to discover the falsity of the representation without an investigation that he might be unable, depending on his client's resources, to undertake." *Id*. FF&G's letter is not "false." *Cf. id*. ("A sophisticated person is less likely to be either deceived or misled than an unsophisticated one. That is less true if a statement is false."). And as Mr. Edelman's declaration indicates, a competent attorney would be able clarify FF&G's role with minimal effort.

> Whether or not a letter is "false, deceptive, or misleading" (in violation of § 1692e) or "unfair or unconscionable" (in violation of § 1692f) are inquiries similar to whether a letter is confusing in violation of § 1692g. After all, as our cases reflect, the inquiry under §§ 1692e, 1692g and 1692f is basically the same: it requires a fact-bound determination of how an unsophisticated consumer would perceive the letter.

*McMillan v. Collection Prof'ls Inc.*, 455 F.3d 754, 759 (7th Cir. 2006). For reasons the Court has already stated, the plaintiffs have not satisfied their burden to show that FF&G's form letter would confuse an unsophisticated consumer. *See supra* Part I.A.1. The non-binding cases that the plaintiffs cite do not persuade the Court to conclude otherwise.[5]

The parties dispute whether § 1692g, like § 1692e, contains an implied materiality requirement. The Court agrees with the plaintiffs that a defendant may not completely omit information that the statute requires debt collectors to disclose and argue that the information is immaterial. *See, e.g., Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365, 374 (4th Cir. 2012) (holding that materiality is not an element of a claim under 15 U.S.C. § 1692e(11), which requires debt collectors to identify themselves as such); *see also Massey v. On-Site Manager, Inc.*, 285 F.R.D. 239, 248 (E.D.N.Y. 2012) (holding that materiality is not an element of a claim

---

[5] Some of the § 1692g cases that the plaintiffs rely on were decided at the pleadings stage. *See Lee v. Forester & Garbus LLP*, 926 F. Supp. 2d 482, 486-87 (E.D.N.Y. 2013) (denying the defendant's motion to dismiss); *Walls v. United Collection Bureau, Inc.*, No. 11 C 6026, 2012 WL 1755751, at *2 (N.D. Ill. May 16, 2012) (same); *Dewees v. Legal Servicing, LLC*, 506 F. Supp. 2d 128, 132-33 (E.D.N.Y. 2007) (same). The debt collector in *Wallace v. Washington Mutual Bank, F.A.* purported to own a debt it had not yet acquired. 683 F.3d 323, 324 (6th Cir. 2012). And the court in *Sparkman v. Zwicker & Assocs., P.C.*, 374 F. Supp. 2d 293, 300-01 (E.D.N.Y. 2005) applied the "least sophisticated consumer" test to a letter that suggested that the plaintiff's purported debt was owned by an unidentified third party.

under § 1681c(a)(2), which bars consumer reporting agencies from reporting civil suits, judgments, and arrest records over seven years old). In this case, however, FF&G's letters disclosed the name of the creditor to whom plaintiffs owed the debt. The question is whether an ambiguous disclosure necessarily violates § 1692g, irrespective of its impact on unsophisticated consumers.

The parties have not cited any Seventh Circuit authority addressing this issue, and case law from other jurisdictions is sparse. The plaintiffs rely on *Lee*, a decision from the Eastern District of New York, which held that materiality is not an element of a claim under § 1692g:

> Defendants fare no better insisting that any misidentification in the Collection Letter was immaterial. As an initial matter, this argument only could apply to the alleged Section 1692e and Section 1692f violations. Section 1692(g)(2) specifically requires debt collectors to identify the creditor to whom the debt is owed in the initial communication or within five days of the initial communication. There is nothing in the statute requiring the identity of the creditor to be "material" to the communication. In addition, even assuming, *arguendo*, that a deceptive statement must be material to violate Section 1692e and Section 1692f, failing to identify the creditor here was not immaterial as a matter of law. The entity to which a debtor owes money potentially affects the debtor in the most basic ways, such as what the debtor should write after "pay to the order of" on the payment check to ensure that the debt is satisfied.

926 F. Supp. 2d at 488. By contrast, the court in *Scheuer v. Jefferson Capital Systems, LLC* applied the materiality requirement to a claims under both §§ 1692e and 1692(a)(2). 43 F. Supp. 3d 772, 777, 783-85 (E.D. Mich. 2014). The defendant in that case sent the plaintiff a letter in which it stated that it was the plaintiff's "current creditor," and also a "debt collector." *Id.* at 774-75. The plaintiff alleged that the letter was confusing because purporting to be both creditor and debt

collector with respect to the same debt was contrary to the nuanced distinction the FDCPA draws between those two roles. *Id.* at 780-81; *see, e.g., Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003) ("[T]he Act treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not." (citing 15 U.S.C. § 1692a))). The *Scheuer* court held that the letter was not misleading under the statute because the plaintiff's purported confusion was based on hyper-technical legal reasoning that even the savviest consumer would never engage in. 43 F.Supp.3d at 781-83. It further held that held that the plaintiff's claim failed because she did not allege that the letter was *materially* confusing:

> Scheuer missed the point when, in response to the Court's questions about materiality, she repeated her legal argument that Jefferson's self-identification as a "debt collector" and "creditor" (or servicer) was inconsistent with the FDCPA. Even if Jefferson's use of those terms did not square with their definitions under the FDCPA, Scheuer must demonstrate that the inaccuracy somehow impaired the ability of an unsophisticated consumer to respond to the Letter. Scheuer has never been able to do that.

*Id.* at 784.

The Court agrees with *Scheuer* that materiality is an element of a claim under § 1692g(a)(2) based on alleged confusion. As the Court previously noted, the Seventh Circuit's unsophisticated-consumer standard applies to both § 1692e and § 1692g claims. *See McMillan*, 455 F.3d at 759. Section 1692e does not contain an express "materiality" requirement, *cf. Lee*, 926 F. Supp. 2d at 488, but the Seventh Circuit has inferred one from the statute's purpose. The FDCPA "is designed to provide information that helps consumers to choose intelligently, and by definition

immaterial information neither contributes to that objective (if the statement is correct) nor undermines it (if the statement is incorrect)." *Hahn*, 557 F.3d at 757-58; *see also Wahl*, 556 F.3d at 646 ("Wahl can't win simply by showing that Midland's use of the term 'principal balance' is false in a technical sense; she has to show that it would mislead the unsophisticated consumer."). The Court sees no reason to limit this principle to § 1692e claims, only. So, for the reasons the Court discussed in connection with the plaintiffs' § 1692e claims, the Court concludes that the alleged confusion regarding FF&G's legal capacity is immaterial.[6]

### Conclusion

For the foregoing reasons, the Court grants the defendants' motion for summary judgment, R. 109 and R. 117, and denies the plaintiffs' motion for summary judgment, R. 114.

ENTERED:

*Thomas M. Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: April 13, 2015

---

[6] Given the Court's ruling on the plaintiffs' claims, it is unnecessary to address Asset's argument that it is not vicariously liable for FF&G's conduct. R. 124 at 14-15; R. 146 at 3-5; R. 152 at 1-5.